FILED
2008 APR 16 A 11:40
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | | |
| KIRK G. JOHNSON, | : | Case No. 05-35220 TPA |
| *Debtor* | : | Chapter 11 |
| | | |
| KIRK G. JOHNSON, | : | Adversary Number 07-2077 |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE INTERNAL REVENUE | : | |
| SERVICE OF THE DEPARTMENT | : | |
| OF THE TREASURY OF THE | : | |
| UNITED STATES OF AMERICA | : | |
| and THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT | : | |
| OF LABOR AND INDUSTRY, | : | |
| *Defendants.* | : | |

*Appearances:*   Phillip Simon, Esq., for Plaintiff
Gary W. Short, Esq., for Plaintiff
Gerald A. Role, for Defendant IRS

**MEMORANDUM OPINION**

Kirk G. Johnson ("Debtor"), who operates a business proprietorship known as "KJ Transit," filed a voluntary Chapter 11 petition on October 10, 2005. Among the secured creditors listed on Schedule D accompanying the Debtor's Petition are the Internal Revenue Service ("IRS") and the Pennsylvania Department of Labor and Industry ("Labor") based on their statutory lien positions involving a federal tax lien and a lien for state unemployment compensation taxes, respectively.

1

The Debtor initiated this adversary proceeding on February 20, 2007 by filing a *Complaint to Determine Validity, Priority, and Extent of Liens of the Internal Revenue Service and Pennsylvania Department of Labor and Industry Against the Debtor's Assets* ("Complaint"), essentially alleging that two higher priority liens, one a purchase money mortgage and the other for county real estate tax, in combination, exceed the fair market value of the Debtor's residence such that there is no equity in the residence to which the IRS and Labor liens can attach. The Debtor seeks relief under *11 U.S.C. §506* to the effect that his residence is free and clear of the IRS and Labor liens. The IRS has filed an answer and the Parties have stipulated to all material factual issues, leaving the case ripe for decision as to the legal issue presented.[1] For the reasons that follow, the Court will grant the Debtor the relief he seeks.[2]

## *FACTS*

The following is gleaned from the Parties' stipulations of fact. The Debtor owns and resides at real property located at 4008 Turnwood Lane, Coraopolis, Pa. ("the Real Property"). The Real Property possessed a fair market value of $279,000 as of the date the bankruptcy petition was filed. As of that same date, the Real Property was subject to a purchase money first mortgage lien

---

[1] Labor was properly served with the Complaint but it has not filed an answer or otherwise responded. Counsel for the Debtor has submitted a letter and e-mail from counsel for Labor indicating that Labor has consented to the relief being sought by the Debtor. Based on Labor's default and the further evidence of its consent, the Debtor will be granted the relief he seeks as against Labor and Labor's claim will be deemed wholly unsecured.

[2] The Court's jurisdiction under *28 U.S.C. §§157* and *1334* was not at issue. This is a core proceeding pursuant to *28 U.S.C. §§157(b)(2)(K)* and *(O)*. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to *Fed.R.Bankr.P. 7052*.

in the amount of $279,440 held by Mortgage Electronic Registration Systems, Inc. ("the MERS Mortgage") and a county real estate tax lien in the amount of $215.61 ("the County Lien"). The MERS Mortgage and the County Lien therefore collectively exceed the fair market value of the Real Property and both of them predate any lien held by the IRS.

The Debtor also owns various items of personal property with a total fair market value of $53,595.83 ("the Personal Property"). Other than the lien of the IRS, the only item of the Personal Property subject to a lien is a 2002 Lincoln Navigator. As of the Petition date, the fair market value of that vehicle was $18,675. At that time the vehicle was subject to a security interest in favor of M.& T. Credit Services, LLC in the amount of $12,221 ("the M&T Lien") superior to the lien of the IRS. Again, leaving aside for the moment the lien of the IRS, the Parties agree that because of the $6,454 of Debtor's equity in this vehicle, as of the Petition date, the Debtor's total equity in all of the Personal Property was $41,374.88.

On February 17, 2006, the IRS filed an Amended Proof of Claim asserting a secured claim in the amount of $178,673.05 against the Debtor and an unsecured priority claim of $2,374.71, for a total claim of $181,047.76. On March 31, 2006, Labor filed a proof of claim asserting a secured claim against the Debtor in the amount of $1,035.59. The Debtor's Amended Chapter 11 Plan was confirmed on May 3, 2007.

***Relief Sought by the Debtor***

The Debtor seeks a determination that the IRS lien does not attach to the Real Property because there is no equity in that property. The Debtor also asks the Court to find that the IRS

possesses a secured claim of only $41,374.88 in the Personal Property (the value of the Personal Property less the amount of the M&T Lien) and that the balance of the IRS claim is unsecured. With respect to the latter request, the matter has been partially resolved. In its portion of the *Combined Pre-trial Narrative Statement*, the IRS states:

> The Internal Revenue Service acknowledges that the amount of its lien exceeds the value of debtor's assets. Accordingly, the Service is willing to stipulate that its claim be allowed as follows: a secured claim of $ 41,374.83, an unsecured priority claim of $ 30,592.52, and a general unsecured claim of $109,079.00.

*Combined Pre-Trial Narrative Statement* at 3, Document No. 14. The Debtor has accepted this proposed stipulation. *See Plaintiff's Brief on Whether a Federal Tax Lien can be Avoided Under Section 506 of the Bankruptcy Code in a Chapter 11 Proceeding* at 1, n. 1, Document No. 18. Thus, by voluntary action of the IRS, the IRS lien, and therefore the amount of its secured claim, has been "stripped-down" to $41,374.83 and the Court need not consider that issue further. The remaining question therefore is whether the IRS lien encumbers both the Personal and Real Property, or only the Personal Property.

## DISCUSSION

In the bankruptcy setting, the phrase "lien stripping" refers to the process of reducing a secured claim to reflect the value of the underlying collateral. Variants of this phrase are a "strip-down" wherein an undersecured creditor's lien is reduced to the equity value held by the Debtor in the collateral (after the amount of any superior lien is deducted from the fair market value of the

collateral), and, a "strip- off" wherein a wholly-unsecured creditor's lien is removed from collateral in which there is no equity value.

In this case, the Debtor was originally seeking a combination of both forms of lien-stripping relief. He asked that the IRS tax lien be stripped off the Real Property because there is no equity in that property, and, that the IRS tax lien be stripped down on the Personal Property to the level of available equity in that property, i.e., $41,374.88. As indicated, the IRS has conceded that its secured claim is reduced to $41,374.88 and therefore the latter request is no longer at issue.

The statutory basis for "stripping off" a lien arises from the combination of *11 U.S.C. §§ 506(a) and (d)*.[3]  First, by operation of *Section 506(a)* an undersecured creditor's allowed claim is bifurcated into secured and unsecured portions. Then, with certain exceptions not applicable here,

---

[3] *Section 506(a)* provides:

(a)     (1)     An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

        (2)     If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

*Section 506(d)* provides:

(d)     To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--

        (1)     such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

        (2)     such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under Section 501 of this title.

5

pursuant to *Section 506(d)* the lien securing the claim is voided to the extent that it is not an allowed secured claim, effectively stripping the lien "off" to that extent. Although the lien stripping process seems straightforward based on the statutory language, there are two issues that must be considered in making the determination whether the Debtor should be granted relief. First, does *Dewsnup v. Timm,* 502 U.S. 410 (1992), preclude the Court from granting the requested relief in this Chapter 11 case? Second, if that hurdle is cleared, is there some reason why an IRS tax lien should be treated any differently than other liens?

*Lien Stripping in Ch. 11–Dewsnup*

The Court must first consider whether the decision in *Dewsnup*, the foremost Supreme Court decision on lien stripping, dictates the outcome in this case.[4] In *Dewsnup* the Court held that a lien on real property could not be stripped-down in a Chapter 7 case. The *Dewsnup* Court construed the statutory language of *Sections 506(a)* and *(d)* in such a manner as to give effect to the pre-Bankruptcy Code rule in liquidation cases that liens pass through a bankruptcy unaffected. The Court did so because it was not convinced that Congress had intended to depart from that rule when it adopted the Bankruptcy Code. *See 502 U.S. at 417*. Importantly, however, the *Dewsnup* Court was careful to limit the holding of the case to the situation squarely before it, *i.e.*, an attempt to strip a lien in a Chapter 7 liquidation case. The Court stated:

---

[4] The willingness of the IRS to stipulate to a substantial reduction of its lien down to the amount of the Debtor's equity value in the Personal Property would seem to signal its acknowledgment that *Dewsnup* has no application here and does not restrict the Court's ability to act. Indeed, the IRS has not even made the argument that *Dewsnup* applies. Nevertheless, the Court does not wish to rest solely on that premise but will independently examine the issue.

> Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Id.*

As a result of this limiting language, it is clear that the *Dewsnup* Court left open the question as to whether the same result would be reached in different circumstances, for instance, in a case under a different chapter of the Bankruptcy Code. Based on this "opening," courts and commentators have examined whether *Dewsnup* also establishes the rule on the availability of lien stripping in Chapter 11 and 13 cases. A great majority of the courts that have considered the issue in reorganization cases have concluded that the holding in *Dewsnup* should be limited to Chapter 7 cases and should not prevent lien stripping in reorganization cases. *See* 4-506 *Collier on Bankruptcy*, 15th ed. Rev. ¶506.06[1][c] (2007); *Sapos v. Provident Inst. of Savs. in the Town of Boston,* 967 F.2d 918, 925 (3d Cir. 1992) (*Dewsnup* Court's interpretation of *Section 506* in a Chapter 7 liquidation does not apply in a Chapter 13 reorganization); *Wade v. Bradford*, 38 F.3d 1126 (10th Cir. 1994) (Chapter 11 debtors could strip down lien on residence notwithstanding *Dewsnup*); *Harmon v. U.S. Through Farmers Home Admin.*, 101 F.3d 574 (8th Cir. 1996) (allowing lien stripping in Chapter 12); *In re Jones*, 152 B.R. 155, 173 (Bankr. E.D. Mich. 1998) (categorically prohibiting lien stripping in Chapter 11 would disrupt established pre-Code law).

Many of the courts so limiting the *Dewsnup* holding have noted that a general prohibition against lien stripping in reorganization cases would be inconsistent with pre-Bankruptcy Code law, and would conflict with key provisions and principles applicable in the reorganization

7

chapters of the Bankruptcy Code. This Court agrees with the majority view and concludes that the holding in *Dewsnup* does not extend to cases filed under Chapter 11 of the Bankruptcy Code.[5]

The Court reaches this conclusion for a number of reasons, all of them related to the significant differences between liquidations and reorganization proceedings. Quite simply, the possibility of lien stripping has been a long-standing aspect of reorganization cases, one that pre-dates the adoption of the current Bankruptcy Code in 1978. *See Dewsnup*, 502 U.S. at 418-19 (recognizing that pre-Code law permitted involuntary reduction of the amount of the creditor's lien in reorganization proceedings, and citing as examples former *11 U.S.C. §§616(1) and (10) ( 1976 ed.)*) Thus, the *Dewsnup* Court's stated reluctance to interpret the Bankruptcy Code in such a manner as to effect a major change in pre-Code practice by permitting lien stripping in liquidation cases (without clear evidence of Congressional intent for such a change) is not implicated in a reorganization setting because permitting lien stripping in a reorganization is consistent with pre-Code practice.

Furthermore, the process of lien stripping is ingrained in the reorganization provisions of the Bankruptcy Code to such an extent that any attempt to extend the holding in

---

[5] The courts adopting this majority view have not all arrived at their conclusion by the same route. Some have concluded that the *Dewsnup* court's limiting construction of *Sections 506(a)* and *(d)* is applicable only in the Chapter 7 setting, leaving *Section 506* available as a vehicle to permit lien stripping in the reorganization chapters. *See, e.g., In re Dever*, 164 B.R. 132 (Bankr. C.D. Cal. 1994). Other courts, however, conclude that the *Dewsnup* construction of *Section 506* must apply in all bankruptcy settings. In this view, *Dewsnup* does not hold that *Section 506(d)* prohibits lien stripping in Chapter 7, it holds only that *Section 506(d)* does not itself provide the authority for a debtor to strip a lien. *See, e.g., In re Virello*, 236 B.R. 199, 204 (Bankr. D.S.C. 1999). Thus, in this view, *Dewsnup* does not prevent lien stripping in reorganization cases because, unlike Chapter 7, those chapters of the Bankruptcy Code do contain provisions that permit lien stripping. *See, e.g., 11 U.S.C. §1123(b)(5)*, discussed infra. at 9-11.

In the present case, the Debtor has invoked *Section 506* as the basis for relief in his Complaint, which is consistent with the first judicial approach discussed above. (It should also be noted that the IRS has never objected that *Section 506* is not a proper vehicle to bring the issue before the Court). However, even if this Court were to follow the second judicial approach it would not deny the Debtor the relief he seeks solely because the Complaint refers only to *Section 506* because that would elevate form over substance. The Court would instead treat the matter as tried by consent pursuant to *Fed.R.Bankr.P. 7015(b)(2)* or grant the Debtor leave to file an amended Complaint pursuant to *Fed.R.Bankr.P. 7015 (a)(2)*. Thus, either way, the Debtor should be granted the relief he seeks.

*Dewsnup* to Chapter 11 cases would require that numerous provisions of the statute be ignored or construed in a very convoluted manner to achieve that result. For instance, Congress has provided a mechanism under *11 U.S.C. §1111(b)* for undersecured creditors to opt out of the claim bifurcation process that would otherwise occur under *Section 506(a)* and instead be treated as fully secured to the extent of their allowed claims.[6] The very fact that this *Section 1111(b)* election exists at all presumes that debtors possess the authority under the Bankruptcy Code to limit secured claims to the value of the collateral. To find that lien stripping is not permitted in Chapter 11 would thus be to ignore the existence of *Section 1111(b)*. *See In re 680 5th Ave Assocs.,* 156 B.R. 726, 731 (Bankr. S.D.N.Y. 1993), *decision affirmed* 169 B.R. 22 (S.D.N.Y. 1993), *judgment affirmed* 29 F.3d 95 (2d Cir.1994).

Another example of Congress specifically recognizing and approving the existence of lien stripping in Chapter 11 cases surfaced when it passed the *Bankruptcy Reform Act of 1994*,

---

[6] In the context of this case, the IRS never exercised that option. In determining whether an *1111(b)* election had occurred in this matter, not only did the Court review the docket of the within Adversary Proceeding but also the main case filings as well. During the course of its review of the main case docket, the Court identified a "Stipulation and Agreement" between the Debtor and the IRS dated April 17, 2007 and filed at Document No. 112 ("Stipulation") and approved by the Court by Order entered on April 23, 2007 at Document No. 115. Paragraph 3 of the *Stipulation* states in part:

> To the extent that any federal tax liens attach to any property owned by the Debtor as of the date of the filing of the Petition in this case, such property shall remain subject to such federal tax liens until such time as the amount of such liens has been fully satisfied.

Neither of the Parties in the Adversary Proceeding has ever referenced the existence of the *Stipulation* as an impediment to this Court's ability to grant the relief sought by the Debtor. The Court can only conclude that the Parties agree the *Stipulation* was not intended to have any effect with respect to the pending Adversary Proceeding, and in particular, was not intended to be a defense available to the IRS. This conclusion is further supported by the language of the Confirmed, Amended Plan subsequently approved by the Court which contains language apparently allowing for the filing of the *Complaint* in this matter and its ultimate resolution by the Court. *See Amended Chapter 11 Plan* at ¶ 2.02, filed May 1, 2007 at Document No. 125. In the alternative, *Fed.R.Bankr.P. 7012(b)* requires every defense to a claim for relief in any pleading to be asserted in the responsive pleading if one is required, as was the case here. Affirmative defenses such as *res judicata* or waiver, must also be affirmatively pled. *Fed.R.Bankr.P. 7008(b)*. The failure to plead a defense means it has been waived. *Fed.R.Civ.P. 12(h)* made applicable in this proceeding pursuant to *Fed.R.Bankr.P. 7012(b)*; *In re Hankerson*, 133 B.R. 711, 713, n. 1 (Bankr. E.D. Pa. 1991). The IRS, having failed to raise any defense arising from the *Stipulation* in any of the pleadings (including its Pretrial Narrative Statement and Consolidated Pretrial Narrative Statement) or brief filed in the Adversary Proceeding, has therefore waived any such defense it may otherwise have had related to the *Stipulation*.

Pub. L. No. 103-394. *Section 206* of that *Act* amended the Code by adding current *11 U.S.C. §1123(b)(5)* which permits a Chapter 11 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." This brought Chapter 11 into conformity with Chapter 13, which includes a similar provision to permit the modification of secured claims generally while preventing the modification of home mortgages.[7] Clearly, *Section 1123(b)(5)* represents an explicit Congressional approval of lien stripping in Chapter 11 cases, subject only to the home mortgage exception. What is most significant for present purposes is the timing of the enactment of the *Bankruptcy Reform Act of 1994* which included this provision when it was passed two years <u>after</u> *Dewsnup* was decided. To hold that *Dewsnup* prevents lien stripping in Chapter 11 cases would be to ignore this clear Congressional intent, something the Court cannot do.

It is also instructive to consider the particular feature of liquidations that seemed to cause the Court in *Dewsnup* to have concerns about whether lien stripping should be permitted in Chapter 7 cases. The Court noted that the "practical effect" of finding that lien stripping was allowed in Chapter 7 would be that a creditor's interest would be frozen at the judicially determined property valuation, leaving the creditor to lose the benefit of any increase in the value of the property that might occur between then and the time of a foreclosure sale. Instead, the debtor would enjoy the benefit of any such increase–a result some might view as a windfall. *See 502 U.S. at 417*. The *Dewsnup* case can thus be interpreted to stand for the proposition that there can be no lien stripping

---

[7] *See 11 U.S.C. §1322(b)(2)*. Note also that the home mortgage exception does not apply to the present case because a "security interest" does not include a statutory tax lien. *See 11 U.S.C. §101(51)*; *In re Marfin Ready Mix Corp*., 220 B.R. 148, 158 n. 10 (Bankr. E.D.N.Y. 1998).

without payment of the debt secured by the lien, and upon failure to so provide, allowing the creditor to purchase the property by credit bid and enjoy any appreciation in value. *See In re Dever*, 164 B.R. 132, 135 (Bankr. C.D. Cal. 1994). By contrast, in reorganization cases any lien stripping is coupled with payments under the plan and ownership of the property being vested in the debtor. This has led courts and commentators to note that creditors in reorganization cases thus receive something in exchange for the voiding of their liens, *i.e.*, payment obligations under a plan of reorganization, so that principle of *Dewsnup* is not violated. *See In re Bowen*, 174 B.R. 840, 855 (Bankr. S.D. Ga. 1994); Baxter Dunaway, *Law of Distressed Real Estate §29.72 (2007)*.

To sum up, lien stripping is a fundamental aspect of reorganization proceedings. To bar lien stripping in cases under the reorganization chapters would:

> ... [I]n essence, gut the sum and substance of the reorganization and rehabilitation of debt concept under the Bankruptcy Code. In such cases, the Debtor would propose a plan for repayment of creditors to the extent of the value of the property securing the creditor's claim, but would still owe the unsecured portion of the claim, post-confirmation, in order to obtain a release of the lien on said property. This would require all plans filed under Chapters 11, 12 and 13 to pay all creditors one hundred percent of their claims in order for the debtor to emerge from bankruptcy with a true "fresh start." Clearly, this has never been the purpose contemplated for *Section 506(d)*.

*In re Butler,* 139 B.R. 258, 259 (Bankr. E.D. Okl. 1992).

The Court therefore concludes that, in general, lien stripping is permitted in Chapter 11 cases, notwithstanding the decision in *Dewsnup*. That leads to a question of whether there is something special about an IRS tax lien that would prohibit lien stripping, creating an exception to this process in favor of the IRS. The Court now turns to that issue.

*Lien Stripping and the Nature of the IRS Lien*

Having concluded that *Dewsnup* does not preclude lien stripping in a Chapter 11 case, the Court must next consider whether the very nature of an IRS tax lien somehow precludes that from being done in these particular circumstances. In so doing, the Court will operate from the presumption that the IRS lien should be treated the same as any other lien unless there is some contrary statutory law or provision of decisional law requiring different treatment.

The lien of the IRS arises pursuant to a statute which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

*26 U.S.C. §6321*. There is nothing apparent from this statutory language which would protect an IRS lien from lien stripping treatment. Furthermore, the Debtor has pointed to a number of cases in which courts have permitted IRS liens to be avoided. For instance, in *In re Dever, supra*, after a long and thoughtful discussion on various aspects of lien stripping, the court noted that *Section 506* does not distinguish between voluntary and involuntary liens. It held that if a voluntary lien is avoidable by a strip down in Chapter 11, then so too should an involuntary one, like an IRS lien. 164 B.R. at 144. The *Dever* court further stated:

> Nothing in Sections 506 or 1129 suggests that IRS liens or claims are totally immune from avoidance or modification. Under the Bankruptcy Code, the IRS is the beneficiary of several specific provisions that reflect Congressional desire to protect the federal fisc. For example, Congress required that all tax obligations must be paid under a Chapter 11 plan within

12

> six years of assessment date. Section 1129(a)(9)(C). Certain tax obligations are entitled to priority under Section 507(a)(7). Section 523(a)(1) makes some tax debts nondischargeable. Although none of the obligations here are alleged to be nondischargeable, most debtors facing IRS liens would not be able to walk out of bankruptcy court in complete defiance of their tax obligations. The granting of IRS priorities and the nondischargeable nature of many such obligations are strong evidence that Congress provided an alternative method of realizing on such claims. Reading an IRS exception into Section 506 to prevent avoidance of the liens here is unnecessary and inappropriate.

164 B.R. at 145.  *See also In re Bowen*, *supra; In re Butler*, *supra.*

The IRS offers precious little in response to convince the Court otherwise. It argues that the nature of its lien is such that it attaches to all of the Debtor's property, real and personal, and that there " is nothing in the Bankruptcy Code, the Internal Revenue Code, or case law which permits the debtor to determine which of his property is subject to the lien, once the value of that lien has been determined." *Defendant Internal Revenue Service's Response to Plaintiff's Brief on Whether a Federal Tax Lien can be Avoided Under 11 U.S.C. §506 in a Chapter 11 Proceeding* at 2-3, Document No. 21.

The only case cited by the IRS in support of its position is *In re Hoekstra,* 255 B.R. 285 (E.D. Va. 2000). In that case, the debtors brought an adversary proceeding seeking to avoid junior tax and homeowners' association liens against their townhouse because the two superior liens against the property already exceeded its value. The bankruptcy court had found in favor of the debtors, distinguishing the case from *Dewsnup* because in that case the property at issue did have some equity, whereas in *Hoekstra* there was no equity in the townhouse. The bankruptcy court concluded that *Dewsnup* prohibited only a "strip-down" of an undersecured claim, not a "strip off" of a wholly-unsecured claim. On appeal, the District Court reversed, agreeing with the IRS that

*Dewsnup* governed the outcome of the case, but concluding that the "indivisible" nature of the IRS federal tax lien made what the bankruptcy court had done more analogous to a prohibited strip-down rather than a permitted strip-off . As the *Hoekstra* court explained:

> The bankruptcy court... [ treated] Creditor's federal tax lien as distinct and individual liens as to each component of property underlying the lien. The [bankruptcy] court concluded that "for the purpose of lien avoidance, each item of collateral must be viewed individually... The avoidance of the lien as to that particular parcel does not affect or impair the lien of Creditor as to any other property to which it may have attached." *In re Hoekstra* 253 B.R. 193, 195. However, the Internal Revenue Code and case law make clear that a federal tax lien is not divisible in this context.
> ...
> Debtors here seek to avoid a portion of a lien where a component of the collateral has no value but other components of collateral have value. The *Dewsnup* Court's clear prohibition against "stripping down" liens leads this Court to reverse the bankruptcy court's judgment voiding Creditor's lien against the Townhouse.

255 B.R. at  290, 292.

For a number of reasons, this Court does not find *Hoekstra* to be particularly relevant or persuasive on the issue presented in the case before it. Perhaps most significantly, *Hoekstra* was decided in the context of a Chapter 7 liquidation proceeding. As such, the court in *Hoekstra* was faced with the clearly applicable precedent of *Dewsnup* and was required to analyze what the debtors were seeking to accomplish in light of that compelling precedent.  In sharp contrast, the present case is a reorganization under Chapter 11 and as noted above, the majority view which is now also adopted by this Court, is that *Dewsnup* does not apply to lien stripping occurring in a reorganization.

The Court is also left unpersuaded by the *Hoekstra* court's view of the "nature" of the IRS lien. The *Hoekstra* court stated that the language of *26 U.S.C. §6321* makes clear that there is but a single lien created; not separate liens upon a debtor's real and personal property. 255 B.R.

at 290 – 91. It is from this aspect of the *Hoekstra* decision that the IRS draws its sole decisional support for the position it takes here, that is, because of its "unitary nature", the IRS lien cannot be stripped off the Real Property.

The IRS admits that, other than the *Hoekstra* decision and the language of *Section 6321* itself, it has no other support for its view that the IRS lien is inviolable so long as there is equity value in any of the collateral subject to the lien. In its brief and again at the time of argument, the IRS provided no in depth public policy analysis or *Dewsnup*-extension argument to support its position under these facts. It simply steadfastly maintained that the language of *28 U.S.C. §6321* required such a result. If this lien inviolability were a consistently held view and practice of the IRS, it might cause the Court pause before ordering relief that runs contrary to such a settled norm. However, the admitted, normal customs of the IRS, carried out pursuant to an enabling statute and regulation, reveals that even the IRS does not treat federal tax liens in the monolithic and indivisible manner that it urges this Court to follow.

*26 U.S.C. §6325(b)*, which allows for the discharge of property subject to a federal tax lien, provides in relevant part:

> (2) **Part payment; interest of United States valueless**.-- Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if--...
>
> (B) the Secretary determines at any time that the interest of the United States in the part to be so discharged has no value.
>
> In determining the value of the interest of the United States in the part to be so discharged, the Secretary shall give consideration to the value of such part and to such liens thereon as have priority over the lien of the United States.

15

*26 U.S.C. §6325(b)(2)(B)*. The IRS has issued regulations which mirror this provision of the Internal Revenue Code. *See 26 C.F.R. §301.6325-1(b)(2)*. As admitted by the IRS at the time of argument, this statutory provision provides the mechanism for removal of an IRS lien from an affected property simply upon a showing by the taxpayer that no equity exists in the affected property. The Court understands that the weight of authority holds that this partial discharge provision is discretionary with the Secretary of the IRS, although perhaps a denial of discharge by the Secretary is subject to review under a deferential abuse of discretion standard. See, for example, *United States v. Polk* 822 F.2d 871, 874 (9th Cir. 1987). However, the Court finds it highly significant that the statute and accompanying regulations contemplate that the alleged "single lien" created by *26 U.S.C. §6321* can, in effect, be treated as separate liens on separate items of property and discharged as to those items of property which are valueless to the United States because they are subject to other lien(s) with priority. Also at the oral argument, Counsel for the IRS represented that it was common practice for the IRS to actually discharge a federal tax lien as against an item of property that has no value.[8] Given this reality, it would make no sense to deny the Debtor relief in this case based solely on a fiction the IRS itself does not consistently follow, that is, that the IRS lien is so indivisible in nature that a Bankruptcy Court cannot strip it off real property that has no equity value while allowing it to remain on personalty that does have value.

---

[8] At the oral argument the Court inquired why the IRS would not be willing to voluntarily "discharge" the lien as against the Real Property in this case. Counsel for the IRS admitted it frequently does just that in other, non-bankruptcy contexts. The IRS could offer no compelling response to that rather straightforward question other than to note that it wished a legal ruling on the matter.

16

### *CONCLUSION*

It is axiomatic that a central purpose of the Bankruptcy Code is to provide a procedure by which the debtor can "reorder his affairs, make peace with his creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt'." *In re Alston*, 297 B.R. 410, 417 (Bankr. E.D. Pa. 2003) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). In reorganization cases that central purpose can often only be accomplished by lien stripping. As the court in *Dever* observed:

> Modifying the rights and interests of secured creditors is at the heart of most reorganizations.... very few Chapter 11 plans seek merely to stretch out or reduce payments to unsecured creditors. Most debtors are currently entering Chapter 11 with their assets fully encumbered, which means that their plans must restructure the secured debt in order to make a meaningful difference in their financial well-being.

164 B.R. at 143. That is certainly the case with the Debtor in the present case. Unless the Court removes the IRS lien from his residence, that lien will remain an anchor dragging him down from achieving the fresh start envisioned by the Code.

For the foregoing reasons, the Court finds in favor of the Debtor on the matters set forth in his *Complaint* and will issue an appropriate order.

Dated: April 16, 2008

_____
Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
Phillip Simon, Esq.
Gary W. Short, Esq.
Gerald A. Role

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| KIRK G. JOHNSON, | : | Case No. 05-35220 TPA |
| *Debtor* | : | Chapter 11 |
| | : | |
| KIRK G. JOHNSON, | : | Adversary Number 07-2077 |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE INTERNAL REVENUE | : | |
| SERVICE OF THE DEPARTMENT | : | |
| OF THE TREASURY OF THE | : | |
| UNITED STATES OF AMERICA | : | |
| and THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT | : | |
| OF LABOR AND INDUSTRY, | : | |
| *Defendants.* | : | |

## **ORDER**

AND NOW, this **16th** day of ***April, 2008***, upon consideration of the ***Complaint to Determine Validity, Priority and Extent of Liens of the Internal Revenue Service and Pennsylvania Department of Labor and Industry Against the Debtor's Assets*** filed by Plaintiff, Kirk G. Johnson t/d/b/a "KJ Transit" at Document No. 1 ("Complaint") and the ***Answer*** filed by the Internal Revenue Service of the Department of the Treasury of the United States of America ("Internal Revenue Service") at Document No. 6, for the reasons stated in the foregoing *Memorandum Opinion*, pursuant to *Fed.R.Bankr.P. 7052,* after notice and hearing and consideration of the stipulations and argument of Counsel,

1

It is hereby **ORDERED, ADJUDGED and DECREED** that the relief requested by the Debtor in his *Complaint* is **GRANTED.**

It is **FURTHER ORDERED** that:

(1)   All of the Internal Revenue Service's tax liens against the Debtor's real estate known as 408 Turnwood Lane, Coraopolis, PA 15108 are declared **NULL, VOID** and **REMOVED**, the legal description for said real property being found in the Deed recorded in the Office of Recorder of Deeds of Allegheny County at Deed Book Volume 11686, page 585, and more further described as follows:

> ALL THAT CERTAIN lot or piece of ground situate in the Township of Moon, County of Allegheny and Commonwealth of Pennsylvania, being Lot No. 915 in the Whispering Woods Plan of Lots, Phase IX, as recorded in the Recorder's Office of Allegheny County, Pennsylvania, in Plan Book Volume 198, pages 63-66. BEING designated as Block 925-G, Lot No. 12 in the Deed Registry Office of Allegheny County, Pennsylvania. UNDER AND SUBJECT to easements, rights of way, oil and gas leases, restrictions, reservations, exceptions, agreements and coal and mining rights as set forth in prior instruments of record. ("Real Property")

(2)   The Internal Revenue Service's tax liens against the Debtor's personal property are declared **NULL, VOID** and **REMOVED** from said personal property to the extent said liens exceed $41,374.88;

(3)   Pursuant to *Section 507(a)(8)* of the Bankruptcy Code the Internal Revenue Service possesses an allowed unsecured, priority claim in the amount of $30,595.00;

(4) The Internal Revenue Service possesses a general unsecured, nonpriority claim in the amount of $109,079.88; and,

(5) The Commonwealth of Pennsylvania, Department of Labor and Industry's tax liens against the Debtor's assets, both the Real Property and the personal property, are declared ***NULL, VOID*** and ***REMOVED*** from said property.

*[signature]*
Thomas P. Agresti
United States Bankruptcy Judge

Case Administrator to serve:
Phillip Simon, Esq.
Gary W. Short, Esq.
Gerald A. Role

3